IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ICEE OF AMERICA, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:02-CV-0364-L |
| | § | |
| MID-AMERICAN ICEE CORPORATION, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendants' (Defendants Mid-American ICEE Corp., Glen Barnes d/b/a ICEE of Tennessee, ICEE of Atlanta, Inc., ICEE Distributors, Inc., ICEE of Little Rock, Inc., Middle Tennessee ICEE Corporation, and Twin City ICEE, Inc., collectively "Summary Judgment Defendants")[1] Motion for Summary Judgment, filed August 2, 2004;[2] Plaintiff ICEE of America, Inc.'s Motion for Partial Summary Judgment, filed August 2, 2004; Plaintiff ICEE of America, Inc.'s Objections to Evidence Submitted in Support of Opposition Defendants' Motion for Summary Judgment, filed September 8, 2004; and Plaintiff ICEE of America, Inc.'s Motion for Rule 56(f) Continuance of Submission of the Opposition Defendants' Motion for Summary Judgment, filed

---

[1]Defendants The ICEE Company and ICEE of Hawaii do not join in Defendants' Motion for Summary Judgment.

[2]After obtaining leave from the court, Plaintiff filed its second amended complaint on February 16, 2005. In filing its second amended complaint, Plaintiff dropped all claims against Defendant Glen Barnes d/b/a ICEE of Tennessee. Plaintiff also dropped its claims of tortious interference with existing contract; tortious interference with prospective economic advantage; and civil conspiracy. Although the second amended complaint was filed after the summary judgment motions, the motions remain valid as to the second amended complaint, because Plaintiff added no new claims or defendants, deleted certain claims, and removed one Defendant from the lawsuit.

September 8, 2004.  After careful consideration of the motions, responses, replies, objections, competent evidence, record, appendices, and applicable law, the court **grants** Defendants' Motion for Summary Judgment; **denies** Plaintiff ICEE of America, Inc.'s Motion for Partial Summary Judgment; **overrules** Plaintiff ICEE of America, Inc.'s Objections to Evidence Submitted in Support of Opposition Defendants' Motion for Summary Judgment; and **denies as moot** Plaintiff ICEE of America, Inc.'s Motion for Rule 56(f) Continuance of Submission of the Opposition Defendants' Motion for Summary Judgment.

## I.    Procedural and Factual Background

This is a declaratory judgment action brought pursuant to 28 U.S.C. § 2201 in which Plaintiff ICEE of America, Inc., ("Plaintiff" or "IOA") seeks a declaration of its rights and obligations under the Lanham Act, 15 U.S.C. §§ 1051, et seq., the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125, and existing licensing agreements ("ICEE license agreements") it has with Defendants Mid-American ICEE Corporation, ICEE of Atlanta, Inc., ICEE Distributors, Inc. ("Distributors"), ICEE of Hawaii, Inc., ICEE of Kansas City, Inc.,[3] ICEE of Little Rock, Inc., Middle Tennessee ICEE Corporation, The ICEE Company, Twin City ICEE, Inc., and Bird ICEE, Inc.,[4] (collectively,

---

[3]In their Response to Motion for Default Judgment Against ICEE of Kansas City, filed February 5, 2004, Defendants presented undisputed evidence that ICEE of Kansas City, Inc., was not in existence at the time Plaintiff attempted to effect service on it.  Further, the evidence shows that ICEE of Kansas City, Inc. merged into Mid-American ICEE Corporation.  In its order, filed August 5, 2004, the court informed Plaintiff that the removal of ICEE of Kansas City, Inc. as a party to this action needed to be accomplished.  To date, Plaintiff has failed to delete ICEE of Kansas City as a party.  As ICEE of Kansas City, Inc. was not in existence at the time of service, it is impossible for Plaintiff to effect proper service.  Accordingly, the court **dismisses without prejudice** ICEE of Kansas City, Inc. as a Defendant pursuant to Rule 4(m) of the Federal Rules of Civil Procedure for failure to effect service within 120 days of the filing of this action.  Moreover, dismissal is appropriate as to ICEE of Kansas City, Inc. because Mid-American ICEE Corporation is a party to this action; and the court, therefore, does not see the need for ICEE of Kansas City, Inc. to be a party to it.

[4]The docket sheet in this action does not reflect that Defendant Bird ICEE, Inc. has been served with process.  Further, there is no evidence in the record indicating that Bird ICEE, Inc. waived service.

"Defendants").  In its second amended complaint, Plaintiff contends that (1) the ICEE license

agreements do not constitute a sale or assignment of trademark rights or registrations; (2) it retains

rights under the ICEE license agreements to use the "ICEE" name and trademarks in each territory

and Defendants are not "exclusive," but "sole" licensees in the territories covered by the individual

ICEE license agreements; and (3) its (or its licensees') use of the "ICEE" name and Trademarks for

purposes other than those identified in the registration certificates for the "Trademarks" listed in

Appendix 1 of the ICEE license agreements do not constitute infringement or dilution of

Defendants' trademark rights under federal or state law.  Accordingly, Plaintiff seeks a declaration

from the court that (1) "the Defendants' rights under their respective ICEE [l]icense [a]greements

are limited to the use of the 'ICEE' name and [T]rademarks for the purposes identified in the

registration certificates for the "Trademarks" listed in Appendix 1 of the ICEE [l]icense

[a]greements . . . [and] particular disputed products or product categories are [not] covered by the

ICEE [l]icense [a]greements"; (2) "Defendants are sole licensees, not exclusive licensees, in the

Territories covered by the ICEE [l]icense [a]greements"; (3) the ICEE license agreements do not

prevent Plaintiff IOA (a) from using the "ICEE" name and Trademarks throughout the country or

(b) from filing trademark registrations relating to the "ICEE" name and Trademarks for all purposes

other than those identified in the registration certificates for "Trademarks" listed in Appendix 1 of

the ICEE [l]icense [a]greements"; (4) "the ICEE [l]icense [a]greements do not constitute a sale or

assignment of trademark rights or registrations"; and (5) "the Defendants' rights in the 'ICEE' name

_____

Additionally, no answer or other response to Plaintiff's complaints has been filed on behalf of Bird ICEE,
Inc.  Accordingly, as there is no proof of service of summons and complaint made upon Defendant Bird
ICEE, Inc. within 120 days after the filing of the complaint, pursuant to Fed. R. Civ. P. 4(m), the court directs
Plaintiff to effect service within 30 days of the date of this opinion and order, or state to the court that it does
not intend to serve Bird ICEE, Inc.  Failure to comply with this directive will result in dismissal of Bird ICEE,
Inc. as a party in this case.

**Memorandum Opinion and Order - Page 3**

and [T]rademarks are not infringed or diluted under federal or relevant state law by the use of the 'ICEE' name and [T]rademarks for purposes other than those identified in the registration certificates for the 'Trademarks' listed in Appendix 1 of the ICEE [l]icense [a]greements, such as the use of the 'ICEE' name and [T]rademarks in connection with the ICEE Toys or other products by Plaintiff IOA or its licensees . . . ."  Pl. Second Am. Compl. at 8.

In their answer, Defendants ICEE Distributors, Inc., ICEE of Little Rock, Inc., Mid-American ICEE Corp., Middle Tennessee ICEE Corporation, and Twin City ICEE, Inc. contend that (1) Plaintiff's claim for declaratory relief is barred by *res judicata*; (2) Plaintiff is estopped from retrying certain issues under principles of collateral estoppel, law of the case, and *stare decisis*; and (3) Plaintiff's claims are barred by virtue of its failure to assert compulsory counterclaims in a prior pending litigation.  Defendant ICEE of Atlanta, Inc. contends in its answer that (1) Plaintiff fails to state a claim upon which relief can be granted; (2) Plaintiff's complaint should be dismissed for lack of personal jurisdiction; (3) Plaintiff's complaint should be dismissed for improper venue; (4) Plaintiff's claims are barred by virtue of Plaintiff's failure to assert compulsory counterclaims in prior pending litigation; and (5) Plaintiff's claims are barred by virtue of collateral estoppel, *res judicata,* and *stare decisis*, as Plaintiff's claims in this case have been decided adversely to Plaintiff in the case of *Icee Distributors, Inc. v. J & J Snack Foods Corp.,* 325 F.3d 586 (5th Cir. 2003).

Defendants The ICEE Company and ICEE of Hawaii, Inc., in their answer, admit that (1) they are not the "exclusive" licensees in the territories covered by their respective ICEE license agreement; (2) Plaintiff's (or its licensees') use of the "ICEE" name and Trademarks for purposes other than those identified in the registration certificates for the "Trademarks" listed in Appendix 1 of the ICEE license agreement do not constitute infringement or dilution of their trademark rights

under federal or state law; and (3) their rights under the ICEE license agreements are limited to the use of the "ICEE" name and Trademarks for the products and purposes identified in the registration certificates for the "Trademarks" listed in Appendix 1 of the ICEE license agreement.  Alternatively, Defendants The ICEE Company and ICEE of Hawaii, Inc. contend that (1) should the court determine that their rights are not so limited, they do not waive any contractual rights therein; and (2) the ICEE license agreements are ambiguous, as they are susceptible to more than one interpretation with respect to their scope.  The court now sets forth the facts on which it relies to resolve the summary judgment motions.  In setting forth the facts, the court applies the summary judgment standard as set forth in the following section.

In the 1960s, the John E. Mitchell Company ("Mitchell Company") developed a frozen carbonated beverage ("FCB") product, which consists of carbonated water and syrup mixed together, along with the equipment necessary to make the FCB product.  The FCB product was sold under the mark "ICEE," and the Mitchell Company filed trademark registrations to use "ICEE" Trademarks in connection with the sale of the FCB products, cups, and machines associated with the ICEE FCB.  These trademark licenses date from the 1970s.  The "ICEE" FCB product is sold throughout the country in convenience stores, retail stores, and movie theaters.  Defendants (or their predecessors-in interest, assignors, or affiliates) entered into ICEE license agreements with ICEEQUIP, a subsidiary of the Mitchell Company.  The ICEE license agreements, which form the basis of the controversy before the court, granted Defendants certain rights covering the FCB product, the equipment used to make the FCB, the cups used as containers for the FCB product, and accompanying trademarks.  The parties do not dispute that the general terms of the ICEE license

agreements are the same or substantially similar for each Defendant.[5]   *See* Principal Brief of Pl. ICEE of America, Inc. in Supp. of its Mot. for Partial Summ. J. at 3; *see* Br. in Supp. of Defs.' Mot. for Summ. J. at 6.

During the  mid-1970s, ICEEQUIP ceased operations.  In 1980, ICEEQUIP changed its name to Mitchell FCB Corporation, and, in 1981, the Mitchell Company transferred the ICEE trademark registrations and applications to Mitchell FCB Corporation.  IOA was formed in 1983 to receive the ownership rights and interests to the "ICEE" Trademarks that were previously held by Mitchell FCB Corporation.  The trademark registration certificates for the Trademarks in dispute identify IOA as the owner of each of the Trademarks that is still active, and the parties do not dispute that IOA's rights are at least equal to those of ICEEQUIP under the ICEE license agreements.  IOA seeks to continue to develop new products to add to the "ICEE" product line. Defendants, Mid-American ICEE Corp., Glen Barnes d/b/a ICEE of Tennessee, ICEE of Atlanta, Inc., ICEE Distributors, Inc., ICEE of Little Rock, Inc., Middle Tennessee ICEE Corporation, Twin City ICEE, Inc., The ICEE Company, and ICEE of Hawaii, Inc. ("Opposition Defendants") challenge IOA's right to sell these new products in their respective geographic areas and contend that IOA must first obtain licensees' approval before the products can be sold.  Among the rights at issue in this case are the parties' rights to use the "ICEE" marks on non-beverage items, such as

---

[5]In its brief, Plaintiff states that a true and correct copy of one of the ICEE license agreements is attached to Plaintiff's first amended complaint at Tab A and a copy of the same ICEE license agreement is also included in Tab 1 to Plaintiff's Appendix in Support of its Motion for Partial Summary Judgment. In support of its proposition that it is undisputed that the general terms of the ICEE license agreements are the same or substantially similar, Plaintiff cites to the Answers of Defendants ICEE Distributors and ICEE of Atlanta.  Accordingly, for summary judgment purposes, the court determines that there is no genuine issue of material fact raised by the parties as to whether the terms of the ICEE license agreements vary among the several Defendants.

toys, lip gloss and candy, and the rights of the Opposition Defendants to exclude others, including IOA and its licensees, from using the "ICEE" marks in Opposition Defendants' territories.

## II. Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita,* 475 U.S. at 587 (1986); *Ragas,* 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513

U.S. 871 (1994).  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas,* 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.; see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.  Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.*  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex,* 477 U.S. at 322-23.  The court now addresses the parties' contentions with respect to Defendants' Motion for Summary Judgment.

## III.    **Defendants' Motion for Summary Judgment**

Summary Judgment Defendants contend that they are entitled to judgment as a matter of law, as their motion (1) conclusively establishes each essential element of their affirmative defenses, (2) negates at least one essential element of each of Plaintiff's claims, and (3) shows that Plaintiff has no evidence in support of one or more of the essential elements of its claims.

### A.    **Affirmative Defenses**

Summary Judgment Defendants assert *res judicata* and collateral estoppel defenses against Plaintiff's claims.  Although Defendants move for summary judgment based on both *res judicata* and collateral estoppel, the court focuses primarily on collateral estoppel, as it is dispositive, and will only briefly address *res judicata*.

### 1.      Collateral Estoppel

In their motion, Summary Judgment Defendants contend that Plaintiff's claims are barred by collateral estoppel. In its response, Plaintiff contends that its claims are not barred by collateral estoppel, as Summary Judgment Defendants fail to establish all of the requisite factors for this affirmative defense.  Collateral estoppel, also known as issue preclusion, "applies to prevent issues of ultimate fact from being relitigated between the same parties in a future lawsuit if those issues have once been determined by a valid and final judgment."  *Vines v. University of Louisiana at Monroe*, 398 F.3d 700, 705 (5th Cir. 2005) (citing *Ashe v. Swenson,* 397 U.S. 436, 443 (1970); Restatement (Second) of Judgments § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between parties, whether on the same or a different claim.") (cited in *Grogan v. Garner,* 498 U.S. 279, 284 (1991))).  Collateral estoppel "is appropriate when: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005) (citing *Southmark Corp. v. Coopers & Lybrand (In re: Southmark Corp.),* 163 F.3d 925, 932 (5th Cir. 1999)); *see Falcon v. Transportes Aeros de Coahuila. S.A.* 169 F.3d 309, 312 (5th Cir. 1999) (internal citation omitted).  In addition to these three factors, the court must also determine that there is no special circumstance that would make it unfair to apply the doctrine of collateral estoppel. *Winters v. Diamond Shamrock Chem. Co.,* 149 F.3d 387, 391 (5th Cir. 1998) (internal citations omitted).  "[A] right, question, or fact distinctly put in issue and directly determined as a ground of recovery by a court of competent jurisdiction collaterally estops a party or his privy from relitigating the issue in a subsequent action." *Freeman v. Lester Coggins*

*Trucking, Inc.,* 771 F.2d 860, 862 (5th Cir. 1985) (quoting *Hardy v. Johns-Manville Sales Corp.*, 681

F.2d 334, 338 (5th Cir. 1982).   If a litigant has fully and fairly litigated an issue, third-parties

unrelated to the original action can bar the litigant from relitigating that same issue in a subsequent

suit through the principle of non-mutual collateral estoppel.   *See United States v. Mollier,* 853 F.2d

1169, 1175 n.7 (5th Cir. 1988).   While complete identity of all parties is not required, the party

against whom the collateral estoppel would be applied generally must either have been a party, or

privy to a party, in the prior litigation.  *Vines v. University of Louisiana at Monroe*, 398 F.3d at 705.

In its second amended complaint, Plaintiff seeks a declaration from the court that (1) "the

Defendants' rights under their respective ICEE [l]icense [a]greements are limited to the use of the

'ICEE' name and [T]rademarks for the purposes identified in the registration certificates for the

"Trademarks" listed in Appendix 1 of the ICEE [l]icense [a]greements . . . [and] particular disputed

products or product categories are [not] covered by the ICEE [l]icense [a]greements" (hereafter

referred to as the use and purpose provision); (2) "Defendants are sole licensees, not exclusive

licensees, in the Territories covered by the ICEE [l]icense [a]greements"; (3) the ICEE license

agreements do not prevent Plaintiff IOA (a) from using the "ICEE" name and Trademarks

throughout the country or (b) from filing trademark registrations relating to the "ICEE" name and

Trademarks for all purposes other than those identified in the registration certificates for

"Trademarks" listed in Appendix 1 of the ICEE [l]icense [a]greements"; (4) "the ICEE [l]icense

[a]greements do not constitute a sale or assignment of trademark rights or registrations"; and (5) "the

Defendants' rights in the 'ICEE' name and [T]rademarks are not infringed or diluted under federal

or relevant state law by the use of the 'ICEE' name and [T]rademarks for purposes other than those

identified in the registration certificates for the 'Trademarks' listed in Appendix 1 of the ICEE

[l]icense [a]greements, such as the use of the 'ICEE' name and [T]rademarks in connection with the ICEE Toys or other products by Plaintiff IOA or its licensees . . . ."  Pl. Second Am. Compl. at 8.

### a.    Limited to the purposes referenced in Appendix 1

With respect to Plaintiff's first claim for declaratory relief, that the Defendants' rights under their respective ICEE license agreements are limited to the use of the "ICEE" name and Trademarks for the purposes identified in the registration certificates for the "Trademarks" listed in Appendix 1 of the ICEE license agreements and that particular disputed products or product categories are not covered by the ICEE license agreements, the court determines that each of the four factors in this case weighs in favor of issue preclusion – the identical issue was previously adjudicated and actually litigated, the determination was necessary to the previous decision, and no special circumstance exists that would make it unfair to apply the doctrine of collateral estoppel.  The court now addresses in detail each of the factors necessary to establish preclusion through collateral estoppel.

### i.    "Actually Litigated"

With respect to the "actually litigated" prong, Summary Judgment Defendants contend that IOA had a full and fair opportunity to litigate this issue in the first action, as (1) IOA was a named defendant in the prior litigation; and (2) IOA was represented by counsel and participated in pre-trial discovery, trial, and made oral arguments to the Fifth Circuit (by counsel in this case) on the same issue it wishes this court to revisit.  Further, Summary Judgment Defendants contend that Plaintiff improperly asserts that the issues in this action and the Louisiana action are different, as the key issue, the scope of the term "Trademarks" in the ICEE license agreements, is identical and was fully and vigorously litigated.  In support of this contention, Summary Judgment Defendants assert that Plaintiff has requested a declaration that Defendants' rights under their respective license

agreements are limited to the use of the "ICEE" name and Trademarks for the purposes identified in the registration certificates for the "Trademarks" listed in Appendix 1 of the ICEE license agreements, and further requests that particular disputed products (toy ICEE-making machines, lip gloss, and candy), or product categories, are covered by the ICEE license agreements. Defs.' Reply to Pl.'s Resp. to Defs.' Mot. for Summ. J. at 5.  Summary Judgment Defendants also contend that in the Louisiana action, this same fact issue was submitted to the jury in a general breach of contract interrogatory.  Summary Judgment Defendants contend that (1) IOA presented evidence and argued that the ICEE license agreements do not cover the trademark on the frozen squeeze-tubes, but only those trademarks on the FCB, FCB machine, and FCB cups listed in Appendix 1 to the ICEE license agreements; (2) IOA presented evidence and argued that the phrase "related to the Trademarks" meant only those marks used with ICEE in a cup because the contract only provided for quality control standards on cups, not any other ICEE product; and (3) on appeal, IOA argued that the phrase "any registrations which may issue . . . relating to the Trademarks" meant only the registrations that would issue if the PTO accepted the pending applications listed in Appendix 1[] and any successful renewal applications for the already-registered marks in Appendix 1.  Summary Judgment Defendants, therefore contend that Plaintiff is asking this court to revisit the same issues that were already litigated in the Louisiana action.

Plaintiff contends that the issues in the Louisiana action and this action are not identical, as the Louisiana action addressed only the February 25, 2000 licensee agreement with J & J Snack Foods and its sale of frozen squeeze-tubes as a licensee of IOA.  Plaintiff asserts that the issue before this court is (1) whether it can obtain new trademark registrations for other products, such as the "ICEE" toys, candy, lip gloss, bobble head dolls, or other products.  The court disagrees.

First, Plaintiff's contention that the Louisiana action addressed only the February 25, 2000 license agreement with J & J Snack Foods Corp. and its sale of frozen squeeze-tubes as a licensee of IOA is flawed. Plaintiff fails to recognize that the issues in dispute in the Louisiana action and in this action is whether IOA, pursuant to its ICEE license agreements[6] with Opposition Defendants, can enter into license agreements *such as* the one entered into with J & J Snack Foods on February 25, 2000. The ICEE license agreements in controversy in both actions are virtually identical. Evidence of the actual litigation of this issue can be found in the language of Fifth Circuit opinion in *J & J Snack Foods*, which summarizes each party's arguments. For example, that opinion states "IOA argues that the *license agreement with Distributors* does not cover the trademark on the push-up tubes, but only those trademarks on the beverage, beverage machine, and cups. [IOA argues further that because] of the limited nature of the *agreement with Distributors*, IOA could not have breached that contract by entering into the licensing agreement with J & J." App. to Br. in Supp. of Defs.' Mot. for Summ. J. at 189-90 (emphasis added); *ICEE Distributors, Inc. v. J & J Snack Foods Corp.,* 325 F.3d 586, 594 (5th Cir. 2003) (emphasis added).

Second, Plaintiff's contention that, the parties in the Louisiana action only litigated the issue of whether the trademark for frozen squeeze-tubes, or push-up tubes, were covered by the ICEE license agreements and not other products such as ICEE Toys, candy, lip gloss, bobble head dolls, is incorrect. In the Louisiana action, Plaintiff argued that the "phrase 'related to the Trademarks' meant *only* those marks used with ICEE in a cup." App. to Br. in Supp. of Defs.' Mot. for Summ.

---

[6]The parties do not dispute that the ICEE license agreement that was before the court in the Louisiana action is virtually identical to the ICEE license agreements that form the basis of the controversy before this court; thus neither party raises a genuine issue of material fact with respect to whether there is any difference of consequence between the ICEE license agreements in the Louisiana action and the ICEE license agreements in the record in this action.

**Memorandum Opinion and Order - Page 13**

J. at 191 (emphasis added); *ICEE Distributors, Inc. v. J & J Snack Foods Corp.*, 325 F.3d at 595 (emphasis added). The plaintiff in that case countered by stating that "it received the rights not only to the trademarks, registrations, and applications listed in [A]ppendix 1 of the [ICEE] license agreement, but also to any other registrations 'relating to the Trademarks' that may be issued in the future, such as an ICEE trademark on push-up tubes." App. to Br. in Supp. of Defs.' Mot. for Summ. J. at 190; *ICEE Distributors, Inc. v. J & J Snack Foods Corp.*, 325 F.3d at 595. Similarly, the issue put squarely before the court by Plaintiff in this case is whether "Defendants' rights under their respective ICEE [l]icense [a]greements are limited to the use of the 'ICEE' name and [T]rademarks for the purposes identified in the registration certificates for the 'Trademarks' listed in Appendix 1 of the ICEE [l]icense [a]greements." Pl.'s Second Am. Compl. at 8. In order for the court to decide this issue, all parties will necessarily have to re-litigate the same points and argue in favor of the same respective positions that Plaintiff IOA and Defendant Distributors had argued in the Louisiana action. IOA argued in the Louisiana action that it has rights to "any other registrations." Here, IOA seeks to reargue the same point. By way of example, this court would necessarily have to revisit the same contractual language and conduct the same analysis to determine whether Plaintiff has a right to "any other registrations" other than those referenced in Appendix 1, which would necessarily include toys, lip gloss, and bobble head dolls. Finally, Plaintiff was a named defendant in the prior Louisiana litigation; participated in pre-trial discovery, trial, and oral arguments to the Fifth Circuit. The court, therefore, determines that, with respect to Plaintiff's first claim for declaratory relief that the Defendants' rights under their respective ICEE license agreements are limited to the use of the "ICEE" name and Trademarks for the purposes identified in the registration certificates for the Trademarks listed in Appendix 1 of the ICEE license

agreements and that particular disputed products or product categories are not covered by the ICEE license agreements, this identical issue was previously and actually litigated in the Louisiana action. Accordingly, the court determines that there is no genuine issue of material fact with respect to whether this issue was actually litigated in the prior Louisiana action.

### ii.     "Previously Adjudicated"

With respect to the "previously adjudicated" prong, Summary Judgment Defendants contend that the issue of whether the ICEE license agreement gives licensees the exclusive right to use all ICEE marks in their respective marketing areas is identical to the issue decided in *J & J Snack Foods Corp.*, *supra*.  In support of this contention, Summary Judgment Defendants state that the prior litigation decided the issue in favor of the licensees by holding that the licensor ICEEQUIP granted the licensees exclusive use of the "ICEE" marks by the ICEE license agreements which "encompassed not only the registrations and applications listed in [A]ppendix 1, but also all other ICEE marks."  Br. in Supp. of Defs.' Mot. for Summ. J. at 11 (quoting *ICEE Distributors, Inc. v. J & J Snack Foods Corp.,* 325 F.3d at 596 (emphasis omitted).  Summary Judgment Defendants therefore contend that this issue was actually decided in the Louisiana action.  Because the prior litigation determined that the licensees have the exclusive right to use all "ICEE" marks in their territories, Summary Judgment Defendants maintain that IOA is precluded from litigating or obtaining a declaratory judgment that the ICEE license agreements do not include toys, lip gloss, candy or any other item using the "ICEE" mark in the Defendants' respective territories.

Plaintiff first contends that the order and injunction following the ruling in the Louisiana action are narrowly limited to the finding that "'ICEE of America's license to J & J Snack Foods Corp. Dated February 25, 2000 is in breach of the licenses of ICEE Distributors.'"  Pl. ICEE of

America's Br. in Resp. to Defs.' Mot. for Summ. J. at 15 (quoting July 16, 2004 Permanent Inj. at 1.).   Second, Plaintiff contends that the final judgment in the Louisiana action did not expressly prevent IOA from obtaining or using new trademark registrations, let alone prevent it from selling, marketing, or distributing genuine products bearing true marks.   In support of this contention, Plaintiff argues that in issuing the final injunction, the court in the Louisiana action expressly lifted its prior bar on all sales of "ICEE" frozen squeeze-tubes in the counties identified in the ICEE license agreements and recognized in its July 16, 2004 Order that it intended to narrow the scope of its first permanent injunction.   Third, Plaintiff contends that the Louisiana action only fully and fairly addressed the February 25, 2000 license agreement with J & J Snack Food Corp. and frozen squeeze-tubes and not any of the products that are at issue here.   Fourth, Plaintiff contends that Summary Judgment Defendants' reliance on the single phrase of the Fifth Circuit opinion in *J & J Snack Foods*, that they have the "exclusive" right to use all "ICEE" marks, in support of the collateral estoppel argument is improper, as (1) the jury interrogatory and the final permanent injunction do not support their argument; (2) the restriction on other licenses "under the Trademark" in *J & J Snack Foods* is found in paragraph 2(c) and not paragraph 2(a), which is operative in this action; (3) ICEE Distributors's theory in the Louisiana action was that frozen squeeze-tubes "related to" the "Trademarks" because they were substitute products for FCBs, there is no evidence that the products under new registrations, such as the "ICEE" toy, candy, or lip balm, are substitutes or "related to" FCBs, and there was no evidence submitted to the jury in the Louisiana action about these products and whether they "related to" FCBs; and (4) the Fifth Circuit's non-binding dicta cannot support an application of collateral estoppel, because the issue of "all other ICEE marks" was not considered or decided at the district court level.   For all of these reasons, Plaintiff contends that

the Louisiana action does not preclude litigation of (a) whether the term "Trademark" covers every possible trademark that IOA develops or obtains, or (b) whether IOA can use existing or future trademarks anywhere. Plaintiff maintains, therefore, that the issues in the two actions are not identical and collateral estoppel does not apply.

The court determines that the issue regarding the use and purpose provision put before the court by Plaintiff IOA in this case was adjudicated in the prior Louisiana action. While Plaintiff contends that the two issues raised in the prior Louisiana action and this action are separate and distinct, it fails to read the decisions of the district court and Fifth circuit in the prior action in conjunction with the arguments made by both parties in that action. An opinion and its conclusions must be read in light of the arguments presented to the court by the parties. *See Next Level Communications LP v. DSC Communications Corp.,* 179 F.3d 244, 252 (5th Cir. 1999). As discussed in detail above, the parties litigated the same issues that are before this court in the Louisiana action, and the court made its conclusions based on those arguments. Relitigation of an issue is barred if "both the facts and the legal standard used to assess them are the same in both proceedings." *Swate v. Hartwell*, 99 F.3d 1282, 1289 (5th Cir. 1996) (quoting *Copeland v. Merrill Lynch & Co., Inc.* 47 F.3d 1415, 1422 (5th Cir. 1995) (internal quotation omitted).

The Fifth Circuit's opinion in the Louisiana action speaks for itself, and the court held that: (1) the ICEE license agreement contract is ambiguous;[7] (2) the ICEE license agreement gave ICEE Distributors a right to marks obtained in the future related to the ICEE business;[8] (3) the ICEE license agreements between ICEEQUIP and Distributors encompassed not only the registrations and

---

[7] *J & J Snack Foods Corp.,* 325 F.3d at 595; *see* App. to Br. in Supp. of Defs.' Mot. for Summ. J. at 193.

[8] *Id; see* App. to Br. in Supp. of Defs.' Mot. for Summ. J. at *193.*

**Memorandum Opinion and Order - Page 17**

applications listed in Appendix 1, but also all other ICEE marks;[9] (4) IOA was bound by the same

contractual terms relating to the Trademarks as ICEEQUIP had been during its term of ownership;[10]

(5) the ICEE license agreement is an exclusive license arrangement only, with ultimate control and

ownership of the Trademarks resting with IOA;[11] (6) Distributors is merely an exclusive licensee

and is not the owner of the marks;[12] (7) the ICEE license agreements give Distributors the power to

bring trademark infringement actions in its territory, it does not provide that it may bring trademark

dilution claims in its area; and (8) the grant of injunction is independently sustainable as a proper

remedy for the breach of contract.[13] In light of these determinations by the Fifth Circuit, Plaintiff's

asserted distinctions are without merit.

This court would, without a doubt, have to revisit the same legal issues discussed in the Fifth

Circuit's opinion, and the underlying facts and legal standard that would be used to assess them

would be the same as in the prior proceeding.  The court would necessarily have to interpret the

same ICEE license agreements; engage in a contract law analysis; apply trademark law; and

determine each party's rights to the use of existing trademarks and future trademarks in the various

geographic areas.  That Plaintiff would like the court to focus its analysis in this case on new product

categories, geographic areas, new trademarks, or specific sections of the ICEE license agreements

is of no moment.  The grant of preclusive effect to a judgment may be proper, even where the actual

---

[9] *Id.* at 596; *see* App. to Br. in Supp. of Defs.' Mot. for Summ. J. at 194.

[10]*Id.* at 593; *see* App. to Br. in Supp. of Defs.' Mot. for Summ. J. at 191.

[11]*Id.* at 599; *see*  App. to Br. in Supp. of Defs.' Mot. for Summ. J. at 197.

[12]*Id; see* App. to Br. in Supp. of Defs.' Mot. for Summ. J. at 197.

[13]*Id; see* App. to Br. in Supp. of Defs.' Mot. for Summ. J. at 197.

claims and the subject matter of each suit may differ.  *See Next Level Communications LP*, 179 F.3d at 250 (citing *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995)).  The underlying controversy requires the court to review substantially the same operative facts.  That the court does not have before it the J & J Snack Foods Corp. February 25, 2000 license agreement does not materially change the requisite factual analysis or alter the requisite legal analysis.  This court would simply have to determine the limitations imposed on the respective parties by the ICEE license agreement.  That this is a declaratory judgment action and there exists no alleged breach of contract created by a contract similar to the J & J February 25, 2000 license agreement, would not change the overall contractual analysis that the court would have to engage in to determine whether licensing contracts dealing with other product categories would amount to breaches of the existing ICEE license agreements.  In conducting their analyses, the Fifth Circuit and the district court in the Louisiana action engaged in factual analyses that would differ in no material way from the hypothetical factual analysis in which this court would have to engage.  Further, the courts in the Louisiana action had to view the contract as a whole in order to determine its terms.  The argument of Plaintiff that the court should focus its analysis on paragraph 2(c), as opposed to focusing on paragraph 2(a), is of no moment.  In order to interpret the ICEE license agreements, this court would have to decide whether the contracts are ambiguous, just as the courts had to decide in the Louisiana action.  Further, in order for this court to interpret paragraph 2(c) in the manner in which Plaintiff would have the court interpret it, this court would necessarily have to conclude that the interpretation of paragraph 2(a) in the Louisiana action was incorrect.[14]  The court would necessarily have to determine whether or not the contract *as a whole* would support the relief that Plaintiff is requesting.

---

[14]Moreover, this court is not in a position to overrule any decision of the Fifth Circuit.

Accordingly, the court determines that Plaintiff fails to raise a genuine issue of material fact with respect to whether the issue regarding the use and purposes provision was previously adjudicated.

### iii.    "Necessary to the Decision"

The court now addresses whether the disposition of this issue was necessary to the outcome of the prior federal litigation.  Summary Judgment Defendants contend that this issue was essential to a final judgment in the first action, as IOA was sued by ICEE Distributors for breaching the ICEE license agreements and a necessary part of the action for breach was the interpretation of ambiguous terms in the ICEE license agreements, and those terms are the same terms that Plaintiff attempts to make an issue before this court.  In particular, the definition of "Trademark" in the ICEE license agreements and the breadth of paragraph 2(a), which grants to the licensee "a license under the Trademarks and under any registrations which may issue to ICEEQUIP relating to the Trademarks,"[15] are in dispute here and were essential to the final judgment in the prior litigation.

Plaintiff contends that the issues before this court were not necessary or essential to the final judgment in the Louisiana action, as there was no need to address any issues concerning whether products such as toys, candy, and lip gloss fell within the ambit of ICEE Distributors's rights under paragraph 2(a) of the ICEE license agreement.  Plaintiff contends further that because these products were not addressed or covered in the alleged breaching license, and were not asserted by the plaintiff in the Louisiana action, any decision made on any product other than the frozen squeeze-tubes was not necessary to the judgment and cannot be precluded by collateral estoppel.

The court determines that the use and purposes provision issue was necessary and essential to the final judgment in the Louisiana action.  In the Louisiana action, the court necessarily had to

---

[15]Br. in Supp. of Defs.' Mot. for Summ. J. at 12 (quoting *ICEE Distributors, Inc. v. J & J Snack Foods Corp.,* 325 F.3d 586, 595 (5th Cir. 2003)) (emphasis in original).

determine each party's respective rights under the ICEE license agreements.  In its determinations that frozen squeeze-tubes fell within the purview of Distributors's rights, as licensee under the ICEE license agreements, and that IOA breached its contract with Distributors, the court necessarily had to interpret the ICEE license agreements.  Further, the court necessarily had to determine whether the ICEE license agreements encompassed more than only the registrations and applications listed in Appendix 1.  Here, as it did in the prior action, IOA is asserting that the ICEE license agreements do not cover more than the registrations and applications listed in Appendix 1.  In other words, Plaintiff puts the same issues in controversy in this action, as it sought to do in the Louisiana action. It was, therefore, necessary for the court in the prior action to decide this same issue.  Accordingly, the court finds that the determination regarding the use and purposes provision was necessary in the prior action and Plaintiff fails to raise a genuine issue of material fact with respect to whether the disposition of this issue was necessary to the outcome of the prior Louisiana action.

### iv.      Fairness

In addition to the three factors of collateral estoppel, the court must also determine that there is no special circumstance that would make it unfair to apply the doctrine of collateral estoppel. Plaintiff contends that special circumstances weigh against applying collateral estoppel in this case to allow certain Defendants, such as ICEE of Atlanta, to invoke the affirmative defense, as it commenced its own action against IOA and others relating to the ICEE frozen squeeze-tubes and that action is pending.

Summary Judgment Defendants disagree that special circumstances exist and contend that Plaintiff has no legal support for such a position.  They contend further that IOA had a full and fair opportunity to litigate the scope of the ICEE license agreements in the Louisiana action and it should

be precluded from litigating that issue here, in Tennessee, and in Georgia.  They also contend that collateral estoppel is being asserted against IOA in Georgia by ICEE of Atlanta and that no special circumstances exist that should prevent it from being asserted here.  The court finds no special circumstances exist that would render estoppel in this case unfair or inappropriate.  Further, Plaintiff, only asserts in summary fashion that applying collateral estoppel would be unfair; it does not provide the court with any specific facts that would support this assertion.  Accordingly, the court determines that there is no special circumstance in this case that would make it unfair to apply the doctrine of collateral estoppel and, as the issue regarding the use and purposes provision has already been determined by the district court in Louisiana and the Fifth Circuit, the doctrine of collateral estoppel prevents the court from reconsidering the issue and Summary Judgment Defendants are entitled to Judgment as a matter of law with respect to this issue.

### b.       Defendants are sole licensees, not exclusive licensees

With respect to Plaintiff's second claim for declaratory judgment relief, that the Defendants' are sole licensees, not exclusive licensees, under their respective ICEE license agreements, the court determines that each of the four factors in this case weigh in favor of issue preclusion – the identical issue was previously adjudicated and actually litigated, the determination was necessary to the previous decision, and no special circumstance exists that would make it unfair to apply the doctrine of collateral estoppel.  The court addresses in detail each of the factors necessary to establish preclusion through collateral estoppel.

### i.       "Actually Litigated"

The Fifth Circuit opinion in *J & J Snack Foods Corp.* outlines the parties arguments in the prior action with respect to the issue of whether the ICEE license agreements convey exclusive

licenses to licensees. The position taken by IOA in the Louisiana action is telling.  It was IOA's position that it retained ownership rights to the trademarks and the intent of the parties was to create an exclusive license.  *J & J Snack Foods Corp.*, 325 F.3d at 598.  Plaintiff seeks to change its position here and argue that the parties intent was only to designate licensees as sole, not exclusive, licensees.  Allowing Plaintiff to relitigate its position would be improper.  Based on the Fifth Circuit opinion, the court determines that this issue was litigated in the Louisiana action.   The court, therefore, determines that there is no genuine issue of material fact with respect to whether this issue was actually litigated in the prior Louisiana action.

### ii.      "Previously Adjudicated"

Summary Judgment Defendants briefly argue that the jury verdict, final judgment of the Western District of Louisiana, and Fifth Circuit opinion in *J & J Snack Foods*, establish that they have the exclusive right to use all "ICEE" marks in their respective territories.  Further, Summary Judgment Defendants contend that the issue before this court is identical to the issue decided in the first action.   Plaintiff maintains, however, that the court in the Louisiana action did not decide whether the licenses conveyed pursuant to the ICEE license agreements were "sole" or "exclusive" licenses. The court disagrees.  In the prior action, the court determined that IOA had breached its ICEE license agreements with ICEE Distributors when IOA contracted with J & J Snack Foods and allowed it to sell frozen-squeeze tubes without first seeking and obtaining ICEE Distributors permission.  The Fifth Circuit affirmed the district court's ruling on the issue of breach of contract and determined that licenses conveyed were exclusive.  Accordingly, the court determines that Plaintiff fails to raise a genuine issue of material fact with respect to whether the issue regarding whether Defendants are sole licensees or exclusive licensees was previously adjudicated.

### iii.      "Necessary to the Decision"

The parties in the prior litigation placed in direct controversy, the same issue as Plaintiff places before this court.  In the Louisiana action, it was necessary for the Fifth Circuit to determine if the distributor was the exclusive licensee of the trademark in its territory.  This issue was paramount to the court's determination of whether the distributor had standing to sue IOA for trademark dilution.  *See J & J Snack Foods Corp.*, 325 F.3d at 597-99. The court held that the distributor was an exclusive licensee. *Id.* at 599.  Accordingly, the court finds that the determination in the prior Louisiana action with respect to this issue was necessary in the prior action and Plaintiff fails to raise a genuine issue of material fact with respect to whether the disposition of this issue was necessary to the outcome of the prior Louisiana action.

### iv.      Fairness

Plaintiff asserts in summary fashion that applying collateral estoppel would be unfair; however, it does not provide the court with any specific facts that would support an  assertion that fairness would dictate a finding against issue preclusion.  Further, the court finds no special circumstances exist that would render estoppel in this case unfair or inappropriate.  Accordingly, the court determines that there is no special circumstance in this case that would make it unfair to apply the doctrine of collateral estoppel and, as this issue has already been determined by the district court in Louisiana and the Fifth Circuit, the doctrine of collateral estoppel prevents the court from reconsidering the issue and Summary Judgment Defendants are entitled to Judgment as a matter of law with respect to this issue.

> **c.      ICCE license agreements do not prevent IOA from using Trademarks or filing new trademark registrations for purposes other than those identified by reference in Appendix 1**

With respect to Plaintiff's third claim for declaratory judgment relief, that the ICEE license agreements do not prevent IOA from using Trademarks or filing new trademark registrations for purposes other than those identified by reference under Appendix 1, the court determines that each of the four factors in this case weigh in favor of issue preclusion – the identical issue was previously adjudicated and actually litigated, the determination was necessary to the previous decision, and no special circumstance exists that would make it unfair to apply the doctrine of collateral estoppel. The court addresses in detail each of the factors necessary to establish preclusion through collateral estoppel.

### i.    "Actually Litigated"

In the previous action, the jury found that IOA breached its license agreement with Distributors and the district court entered its judgment based in part on this jury finding.  On appeal, IOA argued that the district court erred, contending that it did not breach its contract with Distributors and the district court ruling was incorrect.  In litigating whether IOA had breached its contract with Distributors, IOA argued that the ICEE license agreements did "not cover the trademark on the push-up tubes, but only those trademarks on the beverage, beverage machine, and cups." *J & J Snack Foods Corp.*, 325 F.3d at 594.  In support of this contention, IOA cited language from the ICEE license agreements providing that IOA, the licensor, agrees "to grant no other licenses under the Trademarks in the Marketing Area." *Id.* at 594.  In response, Distributors argued that the terms of the contract state that "a license under the Trademarks and under any registrations which may issue to ICEEQUIP relating to the Trademarks" implies "that it received the rights not only to the trademarks, registrations, and applications listed in [A]ppendix 1 of the [ICEE] license agreement, but also to any other registrations relating to the Trademarks that may be issued in the

future." *Id.* at 595.  On appeal, IOA argued in the alternative, that the text of the ICEE license agreement stating that "'any registrations which may issue . . . relating to the Trademarks' meant only the registration that would issue if the PTO accepted the pending application listed in [A]ppendix 1, and successful renewal applications for the already-registered marks in [A]ppendix 1." *Id.*  Based on the Fifth Circuit opinion and the arguments contained therein, the court determines that this issue has been actually litigated in the Louisiana action.  Accordingly, the court determines that there is no genuine issue of material fact with respect to whether this issue was actually litigated in the prior Louisiana action.

### ii.     "Previously Adjudicated"

The court also determines that this issue – that the ICEE license agreements do not prevent IOA from using Trademarks or filing new trademark registrations for purposes other than those identified by reference under Appendix 1 –  was previously adjudicated in the Louisiana action.  After hearing the parties arguments, as referenced above, the Fifth Circuit stated that the contract is ambiguous, and that the "phrase 'and under any registrations . . . relating to the Trademarks' may refer to registrations distinct from the list in [A]ppendix 1."   *J & J Snack Foods Corp.*, 325 F.3d at 595.  The Fifth Circuit, then concluded that the "record fully supports the jury and district court's finding that the contract gave Distributors a right to marks obtained in the future related to the ICEE business." *Id.*  Based on the Fifth Circuit opinion in the Louisiana action, the court determines that this issue was previously adjudicated in the prior Louisiana action.   Accordingly, the court determines that Plaintiff fails to raise a genuine issue of material fact with respect to whether this issue was previously adjudicated.

### iii.     "Necessary to the Decision"

The court finds that the issue – whether the ICEE license agreements prevent IOA from using Trademarks or filing new trademark registrations for purposes other than those identified by reference under Appendix 1 – was necessary and essential to the final judgment in the Louisiana action.  In the Louisiana action, the court necessarily had to determine each party's respective rights under the ICEE license agreements.  In its determinations that frozen squeeze-tubes fell within the purview of ICEE Distributors's rights, as licensee under the ICEE license agreement, and that IOA breached its contract with ICEE Distributors, the court necessarily had to interpret the ICEE license agreements.  Further, the court necessarily had to determine whether the ICEE license agreements encompassed more than only the registrations and applications listed in Appendix 1.  Here, as it did in the prior action, IOA is asserting that the ICEE license agreements do not cover more than the registrations and applications listed in Appendix 1.  In other words, Plaintiff put the same issues in controversy in the Louisiana action, as it seeks to do in this action.  It was, therefore, necessary for the courts in the prior action to decide the same issue.   Accordingly, the court finds that the determination in the prior Louisiana action – that the ICEE license agreements do not prevent IOA from using Trademarks or filing new trademark registrations for purposes other than those identified by reference under Appendix 1 – was necessary in the prior action and Plaintiff fails to raise a genuine issue of material fact with respect to whether the disposition of this issue was necessary to the outcome of the prior Louisiana action.

### iv.     Fairness

Plaintiff asserts in summary fashion that applying collateral estoppel would be unfair; however, it provides the court with no specific facts that support an  assertion that fairness dictates a finding against issue preclusion.  Further, the court finds that no special circumstances exist that

would render estoppel in this case unfair or inappropriate.  Accordingly, the court determines that there is no special circumstance in this case that would make it unfair to apply the doctrine of collateral estoppel and, as this issue has already been determined by the district court in Louisiana and the Fifth Circuit, the doctrine of collateral estoppel prevents the court from reconsidering the issue and Summary Judgment Defendants are entitled to Judgment as a matter of law with respect to this issue.

### d.      ICEE license agreements do not constitute a sale or assignment

With respect to Plaintiff's fourth claim for declaratory judgment relief, that the ICEE license agreements do not constitute a sale or assignment, the court determines that each of the four factors in this case weigh in favor of issue preclusion – the identical issue was previously adjudicated and actually litigated, the determination was necessary to the previous decision, and no special circumstance exists that would make it unfair to apply the doctrine of collateral estoppel.  The court now addresses in detail each of the factors necessary to establish preclusion through collateral estoppel.

### i.      "Actually Litigated"

The Fifth Circuit opinion in *J & J Snack Foods Corp.* outlines the parties' arguments in the prior action with respect to the issue of whether the ICEE license agreements are licenses or assignments.  Distributors argued that "its agreements with IOA, granting Distributors an exclusive license to use the [T]rademarks in its territory, constitute an assignment of rights, not a license." *J & J Snack Foods Corp.*, 325 F.3d at 597.  IOA argued that it retained ownership rights to the trademarks and the intent of the parties was to create an exclusive license, not an assignment. *Id.* at 598.  Based on this review of the Fifth Circuit opinion and the parties arguments in that action,

**Memorandum Opinion and Order - Page 28**

the court determines that this issue has been previously litigated.  Accordingly, the court finds that

there is no genuine issue of material fact with respect to whether this issue was actually litigated in

the prior Louisiana action.

### ii.      "Previously Adjudicated"

The court also determines that this issue was previously adjudicated in the Louisiana action.

The Fifth Circuit stated that  "the contract is an exclusive license arrangement only."  *Id.* at 599.

The opinion further states that "the district court clearly erred in determining that Distributors, not

IOA was the owner of the ICEE registrations . . . Distributors is not the owner of the marks, but

merely an exclusive licensee."  *Id.*  Accordingly, the court determines that evidence in the record

clearly demonstrates that this issue was previously adjudicated in the prior action.

### iii.      "Necessary to the Decision"

The court also finds that this issue was necessary and essential to the final judgment in the

Louisiana action.  In the Louisiana action, the court had to determine whether the ICEE license

agreements constituted a sale of the trademark or assignment of rights.  This issue was put squarely

before the court, as the parties litigated whether Distributors owned the ICEE trademarks and

whether it could sue under the Federal Trademark Dilution Act.  The court had to interpret the ICEE

license agreements to determine whether Distributors or IOA had ultimate control and ownership

of the Trademarks.  *See id.*  Further, the court had to determine whether the ICEE license agreements

created an assignment of rights, sale of the trademark or a license to use the trademark.  Here, as it

did in the prior action, IOA is asserting that it has ultimate control over the Trademarks and that

Summary Judgment Defendants are merely licensees.  In other words, Plaintiff put the same issues

in controversy in the Louisiana action, as it seeks to do in this action. It was, therefore, necessary

for the district court in the prior action to decide the same issue confronting this court.  Accordingly, the court finds that the determination in the prior Louisiana action – that the ICEE license agreements do not constitute sales of the trademark or assignment of rights – was necessary in the prior action and Plaintiff fails to raise a genuine issue of material fact with respect to whether the disposition of this issue was necessary to the outcome of the prior Louisiana action.

### iv.    Fairness

Plaintiff asserts in summary fashion that applying collateral estoppel would be unfair, however, it does not provide the court with any specific facts that would support an  assertion that fairness would dictate a finding against issue preclusion.  Further, the court finds no special circumstances exist that would render estoppel in this case unfair or inappropriate.  Accordingly, the court determines that there is no special circumstance in this case that would make it unfair to apply the doctrine of collateral estoppel and, as this issue has already been determined by the district court in Louisiana and the Fifth Circuit, the doctrine of collateral estoppel prevents the court from reconsidering the issue and Summary Judgment Defendants are entitled to Judgment as a matter of law with respect to this issue.

**e.      Defendants' rights in the "ICEE" name and Trademarks are not infringed or diluted by use for purposes other than those identified in Appendix 1**

With respect to Plaintiff's fifth claim for declaratory relief, that Defendants' rights in the "ICEE" name and Trademarks are not infringed or diluted by use for purposes other than those identified in Appendix 1, the court determines that each of the four factors necessary to establish issue preclusion: the identical issue was previously adjudicated and actually litigated, the determination was necessary to the previous decision, and no special circumstance exists that would make it unfair to apply the doctrine of collateral estoppel, has been met.  The court now addresses each of the factors necessary to establish preclusion through collateral estoppel.

**i.      "Actually Litigated"**

In the prior action, IOA argued that since the federal trademark registrations show that it owns the Trademarks, Distributors had no standing to sue under the Federal Trademark Dilution Act.  In support of its contention that it had standing to sue, Distributors argued that the ICEE license agreements created ownership interest in the ICEE trademarks with respect to its distribution territory, and therefore, its agreements with IOA constitute assignments of rights, not licenses. Further, as stated above, both parties litigated whether the ICEE license agreements encompassed only the registrations and applications listed in Appendix 1, or all other ICEE marks.  *J & J Snack Food Corp.*, 325 F.3d at 596;  App. to Br. in Supp. of Defs.' Mot. for Summ. J. at 194.  The parties in the Louisiana action, therefore, necessarily argued whether Defendants' rights in the "ICEE" name and Trademarks are not infringed or diluted by use for purposes other than those identified in Appendix 1.  Accordingly, the court determines that there is no genuine issue of material fact with respect to whether this issue was actually litigated in the prior Louisiana action.

**Memorandum Opinion and Order - Page 31**

### ii.     "Previously Adjudicated"

The court also determines that this issue was previously adjudicated.  The Fifth Circuit opinion in *J & J Snack Foods Corp*. outlines in detail the issue the court considered with respect to whether Distributors could sue under the Federal Trademark Dilution Act.  *See J & J Snack Foods Corp.*, 325 F.3d at 597.  The court decided that IOA, not Distributors, was the owner of the ICEE registrations and, therefore, Distributors lacked standing to sue.  The court also found that the ICEE license agreements gave Distributors the power to bring trademark infringement actions in its territory, but not trademark dilution claims.  *Id.* at 599 n.46; App. to Br. in Supp. of Defs.' Mot. for Summ. J. at 191.  Further, the Fifth Circuit in the Louisiana action also decided, as stated above, that the ICEE license agreements "encompassed not only the registrations and applications listed in [A]ppendix 1; but also all other ICEE marks."  *Id.* at 596; *Id.* at 194.  The Fifth Circuit, therefore, decided that (1) Distributors's rights in the "ICEE" name and Trademarks were infringed; (2) Distributors's rights in the "ICEE" name and Trademarks  were not diluted under the Federal Trademark Dilution Act;[16] and, as stated above, (3) the ICEE license agreements encompassed not only the registrations and applications listed in Appendix 1, but also all other ICEE marks.  Accordingly, the court determines that Plaintiff fails to raise a genuine issue of material fact with respect to whether this issue was previously adjudicated.

---

[16]Plaintiff seeks a declaratory judgment on this issue under applicable "federal or relevant state law." The court declines to survey the law in search of a remedy for Plaintiff when argument is made in a cursory manner.  Plaintiff is disputing Summary Judgment Defendants' assertion that this issue is barred by collateral estoppel; however, it fails to cite with any specificity any "federal or relevant state law," except the Federal Trademark Act and the Lantham Act.

### iii.    "Necessary to the Decision"

The court finds that this issue was necessary and essential to the final judgment in the Louisiana action.  In the Louisiana action, the court had to determine whether the ICEE license agreements would support a cause of action by Distributors for trademark dilution and trademark infringement.  This issue was put squarely before the court in the Louisiana action, as the parties litigated whether Distributors owned the ICEE trademarks and whether it could sue under the Federal Trademark Dilution Act.  Further, as stated above, the court in the Louisiana action determined that the ICEE license agreements encompassed not only the registrations and applications listed in Appendix 1, but also all other ICEE marks.  In other words, Plaintiff put the same issues in controversy in the Louisiana action as it seeks to do in this action. It was, therefore, necessary for the courts in the prior action to decide the same issue facing this court.  Accordingly, the court finds that the determination in the prior Louisiana action – that Defendants' rights in the "ICEE" name and Trademarks are not infringed or diluted by use for purposes other than those identified in Appendix 1 – was necessary in the prior action and Plaintiff fails to raise a genuine issue of material fact with respect to whether the disposition of this issue was necessary to the outcome of the prior Louisiana action.

### iv.    Fairness

Plaintiff asserts in summary fashion that applying collateral estoppel would be unfair; however, it does not provide the court with specific facts that would support an assertion that fairness would dictate a finding against issue preclusion.  Further, the court finds no special circumstances exist that would render estoppel in this case unfair or inappropriate.  Accordingly, the court determines that there is no special circumstance in this case that would make it unfair to apply

the doctrine of collateral estoppel and, as this issue has already been determined by the district court in Louisiana and the Fifth Circuit, the doctrine of collateral estoppel prevents the court from reconsidering the issue and Summary Judgment Defendants are entitled to Judgment as a matter of law with respect to this issue.

**2.**      ***Res judicata***

In its motion, Defendant Distributors contends that Plaintiff's claims are barred by *res judicata*, as each factors of the affirmative defense of *res judicata* has been conclusively established. Distributors maintains that it is therefore entitled to judgment as a matter of law on IOA's claims for declaratory relief on the scope of "ICEE" marks included in the Trademark License.   In its response, Plaintiff contends that Distributors cannot be successful in asserting an affirmative defense of *res judicata*, as (1) it failed to establish there was a prior final judgment on the merits by a court of competent jurisdiction; (2) there is no identity of parties between this action and the Louisiana action, as IOA and ICEE Distributors are the only parties common to both actions; and (3) the claims involved in the two actions are different.

The doctrine of *res judicata* prevents the relitigation of claims that have already been finally adjudicated or that should have been litigated in a prior lawsuit.  This doctrine applies when: (1) there was a prior final judgment on the merits by a court of competent jurisdiction; (2) the prior judgment was between identical parties or those in privity with them; and (3) there is a second action based on the same claims as were raised or could have been raised in the first action.  *U.S. ex rel. Laird v. Lockheed Martin Eng'g and Sci. Servs. Co.,* 336 F.3d 346, 357 (5th Cir. 2003).

**a.    Judgment on the merits by a court of competent jurisdiction**

Distributors contends that a final judgment was entered in the Louisiana action on January 14, 2004, thus there is a prior final judgment on the merits.  Plaintiff counters that the purported final judgment and permanent injunction have been superseded upon postjudgment motions, and accordingly the initial version of the permanent injunction (as referenced in the final judgment of the Louisiana action) cannot support the requested summary judgment and is not proper summary judgment evidence.  Plaintiff states that Distributors incorrectly relies on the January 14, 2004 district court order in asserting its *res judicata* defense, as the district court vacated the first permanent injunction contained in the January 14, 2004 Order after the Fifth Circuit ruled on an interlocutory appeal and after the Louisiana action defendants (including IOA) sought and obtained postjudgment relief.  Plaintiff maintains, therefore, that the last word of the judgment in the Louisiana action occurred in that court's postjudgment order and amended permanent injunction entered on July 16, 2004.  As Distributors did not include this post-judgment order or the amended permanent injunction in Defendants' summary judgment evidence, Plaintiff contends that it failed to establish there was a prior final judgment on the merits by a court of competent jurisdiction.  In its reply, Distributors argues that the final judgment and amended judgment attached to it's reply brief remain in full force and effect, and that the modification did not change the conclusion that the February 25, 2000 license agreement with J & J Snack Foods breached the 1970's ICEE license agreements with ICEE Distributors.  The court determines that Plaintiff does not raise a genuine issue of material fact as to whether there was a final judgment on the merits in the prior action by a court of competent jurisdiction.

The court finds that final judgment in the Louisiana action is a final judgment on the merits by a court of competent jurisdiction. The vacatur of the November 21, 2001 permanent injunction does not negate that a final judgment, by a court of competent jurisdiction, was entered in the Louisiana action on January 16, 2004. In making this determination the court need not rely on the status of the permanent injunction entered in that case, but must only consider whether there exists a final judgment on the merits, entered by a court of competent jurisdiction. As a final judgment on the merits was entered by a court of competent jurisdiction, there is no genuine issue of material fact that the first factor of Defendant Distributors's *res judicata* defense has been met.

> **b.     Prior judgment was between identical parties or those in privity with them**

Defendant Distributors contends that it sued Plaintiff IOA in the Western District of Louisiana, Shreveport Division ("Louisiana action"), for breaches of ICEE license agreements, and, therefore, the parties in this action and the Louisiana action are identical or privies.

Plaintiff counters that there is no identity of parties between this action and the Louisiana action, as IOA and ICEE Distributors are the only parties common to both actions. Plaintiff further contends that J & J Snack Foods Corp., a co-defendant of IOA in the Louisiana action, is not in privity with IOA. Alternatively, Plaintiff maintains that even if privity were established by the summary judgment evidence, it would be irrelevant, because IOA is seeking relief as to Distributors as a licensee under the ICEE license agreements and Distributors's posture in this action is not comparable to J & J Snack Food Corp.'s posture in the Louisiana action.

In its reply, Distributors asserts that only it is defending on the basis of res judicata and the fact that the other Defendants do not rely on the defense does not deprive it of its *res judicata* defense and the privity requirement is met in this case.

The court determines that, as both Distributors and Plaintiff IOA were parties to the prior Louisiana action, there is no genuine issue of material fact with respect to the privity factor of *res judicata*.  Accordingly, the court determines that Defendant Distributors has established the second factor of its *res judicata* defense.

### c.    Second action based on same claims as were raised or could have been raised in the first action

Distributors contends that the issue before the court has already been decided, and the claims raised in this action were raised or could have been raised in the Louisiana action.  In support of this contention, Defendant Distributors states that (1) a declaratory judgment declaring that

> "Defendants' rights under their respective ICEE [l]icense [a]greements are limited to the use of the 'ICEE' name and trademarks for the purposes identified in the registration certificates for the Trademarks listed in Appendix 1 of the ICEE [l]icense [a]greements, and further declaring whether particular disputed products [toy ICEE-making machines, lip gloss, and candy] or product categories are covered by the ICEE [l]icense [a]greements"[17]

in this action would undermine the jury verdict in the Louisiana action; (2) IOA already argued that the ICEE license agreements only covered FCB products when it argued that they did not cover ICEE frozen squeeze-tubes; and (3) the Fifth Circuit held that the license agreements "encompassed not only the registrations and applications listed in [A]ppendix 1, but also all other ICEE marks."[18]

Plaintiff counters that the claims involved in the two actions are different.  Specifically, Plaintiff contends that the prior Louisiana action involved a license agreement for frozen squeeze-tubes, while this action involves declaratory relief concerning entirely different products not

---

[17]Br. in Supp. of Defs.' Mot. for Summ. J. at 10 (quoting Pl.'s First Am. Compl., p. 11, prayer "A(1)") (internal quotations omitted).

[18]Br. in Supp. of Defs.' Mot. for Summ. J. at 10 (quoting *ICEE Distributors, Inc. v. J & J Snack Foods Corp.*, 325 F.3d at 596) (emphasis omitted).

adjudicated in the prior action such as toys, candy and lip gloss. Plaintiff further contends that ICEE Distributors's only claim in the prior action involved whether IOA's license agreement with J& J Snack Foods, dated February 25, 2000, concerning the use of the "ICEE" mark on frozen squeeze-tubes, was in breach of IOA's prior ICEE license agreement to ICEE Distributors regarding its rights concerning frozen carbonated beverages, cups, and dispensers. Plaintiff contrasts this action with the prior Louisiana action by asserting that (1) it covers "non-frozen carbonated beverage products" such as toys, candy, and lip gloss, which were not products at issue in the Louisiana action and (2) it does not involve the February 25, 2000 license agreement with J & J Snack Foods, which was the limited scope of the claim in the Louisiana action. Further, according to Plaintiff, the nature of relief sought, the acts forming the basis of the complaints, the products and trademark registrations at issue, and the transactions at issue also differ. In support of its contention, Plaintiff states that Distributors, the plaintiff in the Louisiana action, brought claims against IOA for breach of contract, trademark dilution, and trademark infringement. In this action, Plaintiff seeks relief regarding the scope of the license granted to Distributors and the other Defendants in paragraph 2(a) of the ICEE license agreement, which, according to Plaintiff , is an issue that was neither expressly submitted to the jury nor resolved by the final judgment in the Louisiana action. For these reasons, Plaintiff contends that the claims in both actions are not identical and *res judicata* does not apply to bar this action.

In its reply, Defendant Distributors contends that (1) the judgment in the Louisiana action and the Fifth Circuit opinion bar IOA from relitigating the scope of products in ICEE license agreements and whether the "ICEE" marks that Distributors can exclusively use in its territories include "all ICEE marks;" and (2) the two actions involve the same claims, as the transaction at

issue in both cases are the agreements between ICEEEQUIP and Distributors in the ICEE license agreements.  The court determines that this action is based on the same claims as were raised or could have been raised in the first action.

*Res judicata*, or claim preclusion, prohibits parties from raising any claim or defense in a later action that was or could have been raised in support of or in opposition to the cause of action asserted in the prior action.  *See Allen v. McCurry,* 449 U.S. 90, 94 (1980). The Fifth Circuit applies a transactional test of the Restatement § 24 in determining whether the same claim or cause of action is involved in both suits.  *B.R. Eubanks, M.D. v. Federal Deposit Ins. Corp.*, 977 F.2d 166, 171 (5th Cir. 1992).  Under this approach, the critical issue is whether the two actions are based on the "same nucleus of operative facts." *Id.*  This inquiry requires the court to look at the factual predicate of the claims asserted, not the legal theories upon which a plaintiff relies.  *Id.*  Applying this test, it is clear that this action is based on the same set of operative facts as the prior action, that is, the rights arising out of the ICEE license agreements.  That the prior action also involved a contract with J & J Snack Foods Corp. is of no moment.  The issues in the prior action, which also exist in this action, are whether the ICEE license agreements conferred certain rights to the licensees or whether those rights remain with Plaintiff IOA.  The last requirement for *res judicata* is met as to Defendant Distributors.   Accordingly, as there is no genuine issue of material fact as to Defendant Distributors's *res judicata* affirmative defense, the court determines that *res judicata* bars all of Plaintiff's claims against Defendant Distributors and Defendant Distributors is entitled to judgment as a matter of law.  The court now turns to Plaintiff's motion for partial summary judgment.

### IV.    **Plaintiff's Motion for Partial Summary Judgment**

It is motion for partial summary judgment, Plaintiff requests the court to enter a declaratory judgment stating that (1) IOA is the owner of the Trademarks identified in the ICEE license agreements as well as subsequently created or registered trademarks subject to the ICEE license agreements; (2) Defendants are merely licensees of the Trademarks under the terms and conditions set forth in the ICEE license agreements; (3) it is not prevented by the ICEE license agreements from using the Trademarks or any of the word or design marks that are included in the Trademarks, such as the "ICEE" polar bear, the word mark "FROZENATED," the work mark "ICEE Coldest Drink in Town," and the word mark "I" used with a drawing of the polar bear, in any Marketing Area; (4) the agreement in 2(c) of the ICEE license agreements to grant no other licenses under the Trademarks is limited to the "Trademarks" as the term is defined on page 1 of the ICEE license agreements, and does not include any and all future Trademarks that IOA may obtain; (5) nothing in the ICEE license agreements prevents IOA from developing new trademarks using the "ICEE" mark and other marks used in the Trademarks, including the polar bear and the word marks described above, seeking new trademark registrations, or applying the "ICEE" mark and other marks to new products other than FCBs, cups, and FCB machines; (6) Defendants lack standing to bring a claim for trademark dilution and the ICEE license agreements do no confer a right on licensees to bring any such suit; (7) its regional licensees cannot assert trademark infringement claims or unfair competition claims under the Lanham Act against parties that market, distribute, or sell genuine products bearing true trademarks from or authorized by IOA, to the extent the products are sold without change; (8) its use of its Trademarks, or use of trademarks authorized by IOA, cannot support a claim for trademark dilution by any of its licensees; (9) Defendants lack standing to bring

a trademark dilution claim under the Federal Trademark Dilution Act, as they do not own the Trademarks; (10) the licensees cannot maintain a claim under the Federal Trademark Dilution Act as a matter of law against the sale or resale of genuine products bearing a true mark, so long as the goods or services are unchanged; and (11) Summary Judgment Defendants, particularly ICEE Distributors and ICEE of Atlanta, are liable for interfering with IOA's rights to develop, market, and sell the ICEE Toy.[19]  In support of the relief requested, Plaintiff relies on the Fifth Circuit opinion in *J & J Snack Foods Corp*., contract law, and trademark law.  As the court disposes of this case on collateral estoppel and *res judicata* grounds, Plaintiff's arguments in support of its motion for partial summary judgment are of no moment.  The court has already determined that Defendants are entitled to summary judgment on the basis of collateral estoppel.  To consider Plaintiff's motion and grant any aspect of it would be wholly inconsistent to the granting of Summary Judgment Defendants' motion.  Accordingly, the court **denies as moot** Plaintiff ICEE of America, Inc.'s Motion for Partial Summary Judgment.[20]  The court turns to address Plaintiff's objections to evidence.

## V.     Plaintiff's Objections to Evidence

Plaintiff objects to and moves to strike certain evidence relied upon by Summary Judgment Defendants.  In particular, Plaintiff contends that the Affidavit of Jack McAnally and Attached Exhibits ("McAnally affidavit"), contained in Summary Judgment Defendants' Appendix 100-168, and Summary Judgment Defendants' "final judgment" document, contained in Summary Judgment

---

[19]As stated above, Plaintiff dropped this claim as to all Defendants upon filing its second amended complaint.

[20]The court notes that to the extent that Plaintiff seeks additional relief for the first time in its motion, any such relief is denied, as the court will not grant relief for claims raised for the first time on summary judgment.  If Plaintiff sought to amend its pleadings, it should have sought leave to amend under Rule 15 of the Federal Rules of Civil Procedure.

**Memorandum Opinion and Order - Page 41**

Defendants' Appendix 171-175, are not competent evidence.  Summary Judgment Defendants do not rely on the McAnally affidavit in asserting their affirmative defenses.  Further, the court rules on Defendants' motion on the basis of those affirmative defenses, and nothing else.  As the court did not rely on the McNally affidavit in making its determination in this case, Plaintiff's objections to that evidence is **overruled as moot**.

With respect to the "final judgment" document submitted by Summary Judgment Defendants in support of the motion for summary judgment, Plaintiff contends that because the document references a permanent injunction that has subsequently been vacated and modified by the district court in the Louisiana action, it does not reflect the true state of affairs in the Louisiana action, is in dispute, and is not competent summary judgment evidence.  Summary Judgment Defendants counter that the "final judgment" document submitted as summary judgment evidence remains in full force and effect.  Further, Summary Judgment Defendants contend that while the modified permanent injunction has little relevance to the issues raised  by Summary Judgment Defendants on summary judgment, they attach a true and correct copy of it to their response.

In its reply, Plaintiff contends that the court must review the current version of the Louisiana court's permanent injunction.  Further, Plaintiff asserts that the district court in the Louisiana action modified its first injunction, which barred all sales of "ICEE" frozen squeeze-tubes, and narrowed the relief to simply bar conduct to the extent that J & J Snack Foods Corp. acted as a purported authorized licensee of IOA.  Plaintiff therefore contends that the import of this modification is that it acknowledged that IOA – as owner of its Trademarks – can decide to develop new products that can be sold under IOA's Trademarks.  Finally, Plaintiff maintains that Distributors, in the Louisiana action, was not successful in barring all sales of those new products in its Marketing Areas by

invoking trademark law or rights under the ICEE license agreements and that Defendants are simply licensees of IOA, not trademark owners themselves.   Plaintiff, therefore, requests that the court sustain its objection, strike the "objected to" portions of evidence, and grant such other relief as the court deems just and proper.

"The doctrine of collateral estoppel applies to prevent issues of ultimate fact from being relitigated between the same parties in a future lawsuit if those issues have once been determined by a valid and final judgment."  *Vines v. University of Louisiana at Monroe*, 398 F.3d at 705. Plaintiff proffers no evidence calling into question or raising a genuine issue of material fact as to the validity and finality of the judgment in the Louisiana action.   Further, to the extent that modifications to the permanent injunction were made by the district court in the Louisiana action, those modifications do not change this court's analysis of that final judgment as it relates to the issues of ultimate fact before this court.   In other words, the court does not rely on the permanent injunction in making any of its rulings.   The modifications made to the permanent injunction effect this court's analysis in no way, as the court does not rely on the existence or breadth of the permanent injunction, but only on the Fifth Circuit court's rationale as encapsulated in its opinion. Accordingly, Plaintiff's objections to the final judgment document submitted by Summary Judgment Defendants in support of their motion for summary judgment is **overruled**.  The court now addresses Plaintiff's request for a Rule 56(f) motion for continuance.

## VI.    Plaintiff ICEE of America Inc.'s Motion for Rule 56(f) Continuance

Plaintiff requests that the court continue the submission of the Summary Judgment Defendants' motion for summary judgment and allow it to submit a supplemental summary judgment response, take additional discovery, and submit additional affidavits, as provided by Rule

56(f) of the Federal Rules of Civil Procedure.  In particular, Plaintiff requests a continuance to allow it time to (1) depose McAnally and submit a supplemental brief related to testimony contained in his affidavit and (2) permit it to present additional evidence regarding its tort claims.  As stated above, the court does not rely on the McAnally affidavit for the disposition of any of Plaintiff's claims in this action.  A continuance, therefore, is unnecessary with respect to the McAnally affidavit.  With respect to its tort claims, the request for continuance is moot as Plaintiff has voluntarily dismissed all tort claims in this action.  Accordingly, the court **denies as moot** Plaintiff ICEE of America Inc.'s Motion for Rule 56(f) Continuance of Submission of the Opposition Defendants' Motion for Summary Judgment.

## VII.   Remaining Defendants

### A.   Bird ICEE

As stated in n.4, *supra*, there is no evidence in the record that Bird ICEE, Inc. has been served with process, waived service, or filed an answer or other response to Plaintiff's complaints. Accordingly, as there is no proof of service of summons and complaint made upon Defendant Bird ICEE, Inc. within 120 days after the filing of the complaint, pursuant to Fed. R. Civ. P. 4(m), the court directs Plaintiff to effect service within 30 days of the date of this opinion and order, or state to the court that it does not intend to serve Bird ICEE, Inc.  Failure to comply with this directive will result in dismissal of Bird ICEE, Inc. as a party in this case.

### B.   ICEE Company and ICEE of Hawaii

Defendants ICEE Company and ICEE of Hawaii filed answers in this action, but did not move for summary judgment.  ICEE Company also filed a cross-claim against all Defendants except ICEE Hawaii, seeking a declaratory judgment as to the parties' rights and obligations under the

ICEE license agreements.   The ICEE Company also alleged civil conspiracy by the other Defendants, except ICEE Hawaii, to deprive it of its rights and interests by interfering with and hindering business opportunities, and the development and marketing of products under the ICEE name.  As these claims are not disposed of in this memorandum and opinion, the parties are directed to advise the court of the status of these claims and the proposed disposition thereof.

## VIII.   Conclusion

For the reasons stated herein, no genuine issues of material fact exist with respect to Plaintiff's claims, and Summary Judgment Defendants are entitled to judgment as a matter of law on all of Plaintiff's claims.   Accordingly, the court **grants** Defendants' Motion for Summary Judgment and **dismisses with prejudice** all claims against them; **denies** Plaintiff ICEE of America, Inc.'s Motion for Partial Summary Judgment; **overrules** Plaintiff ICEE of America, Inc.'s Objections to Evidence Submitted in Support of Opposition Defendants' Motion for Summary Judgment; **dismiss without prejudice** ICEE of Kansas City, Inc. pursuant to Fed. R. Civ. P. 4(m); and **denies as moot** Plaintiff ICEE of America, Inc.'s Motion for Rule 56(f) Continuance of Submission of the Opposition Defendants' Motion for Summary Judgment.  The court also **directs** Plaintiff to effect service on Bird ICEE within 30 days of the date of this opinion and order, or state to the court that it does not intend to serve Bird ICEE, Inc.  The court **directs** Plaintiff, ICEE Company and ICEE of Hawaii to file a status report within **30 days of the date of this opinion and**

**order** regarding the status of the remaining claims of these parties and a proposed disposition thereof.

      **It is so ordered** this 29th day of September, 2005.


                    Sam A. Lindsay
                    United States District Judge

**Memorandum Opinion and Order - Page 46**